UNITED STATES of America,
Plaintiff–Appellee,

v.

Donovan Dwayne OLIVER; Darryl Lee
McMillan; Nathaniel Jones,
Defendants–Appellants.

Nos. 93–10770, 93–10775 and 93–10779.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1994.*

Decided July 6, 1995.

* Submitted on the briefs as to No. 93–10775.

Anthony P. Capozzi, Fresno, CA, for defendant-appellant Oliver; Richard G. Cenci, Fresno, CA, for defendant-appellant McMillan (on the briefs); and Francine Zepeda, Asst. Federal Public Defender, Fresno, CA, for defendant-appellant Jones.

Patrick Hanley, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Before: HUG, CANBY, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Defendants Donovan Dwayne Oliver, Darryl Lee McMillan, and Nathaniel Jones appeal their convictions and sentences for carjacking/aiding and abetting, in violation of 18 U.S.C. §§ 2 and 2119, and using a firearm

during a crime of violence/aiding and abetting, in violation of 18 U.S.C. §§ 2 and 924(c). We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, and vacate and remand in part.

## I.

### Background

The evidence at trial disclosed the following facts: On December 7, 1992, Oliver, Jones and McMillan drove to a liquor store in Bakersfield, California. In the liquor store parking lot, they approached Ali Nassar Mutanna and Abdullah Mardaie, who were in Mardaie's parked car. After ordering Mutanna and Mardaie out of the car, Oliver held them at gunpoint. Oliver stuck the barrel of his firearm into Mutanna's left ear and held it there to ensure that Mutanna would not move, causing Mutanna's ear to bleed profusely. Meanwhile, Jones and McMillan searched Mutanna's and Mardaie's pockets. Oliver then forced Mutanna behind the liquor store, ordered him to lie on the ground, and struck him in the head while he was lying there. Oliver told Mutanna that Oliver would kill him if he moved. Oliver then got into Jones' car, which was being driven by McMillan, and fired a shot as they drove away.

Jones had forced Mardaie into Mutanna's car, and Jones followed Oliver and McMillan as they left the scene. After they travelled a short distance, Jones ordered Mardaie out of the car.

After defendants left, Mutanna flagged down a police car. Police officers located Mutanna's car a few blocks away from the liquor store. Jones fled in Mutanna's car when he noticed the police car approaching. After a short car chase, Jones crashed Mutanna's car and was apprehended. Jones' car was also located nearby, with the gun used by Oliver in the back seat. Oliver and McMillan were arrested shortly thereafter.

Defendants were indicted on December 30, 1992, with one count of carjacking/aiding and abetting, in violation of 18 U.S.C. §§ 2 and 2119, and one count of using a firearm during a crime of violence/aiding and abetting, in violation of 18 U.S.C. §§ 2 and 924(c). On July 29, 1993, defendants were convicted by a jury on all counts. Defendants were sentenced under the 25–year (300 months) statutory maximum set forth in § 2119(2), because Mutanna suffered serious bodily injury during the crime. Defendants were each sentenced to a total of 300 months on the carjacking count and a consecutive 60 months for the use of a weapon.

Defendants timely appealed their sentences and convictions on December 17, 1993.

## II.

### Grand Jury Indictment

Defendants Oliver and McMillan first argue that the district court lacked jurisdiction because the indictment against them was returned in a courtroom closed to the public. See Rule 6(f), Fed.R.Crim.P. ("indictment[s] shall be returned by the grand jury to a federal magistrate in open court"). "[E]rrors in the grand jury indictment procedure are subject to harmless error analysis unless 'the structural protections of the grand jury have been compromised as to render the proceedings fundamentally unfair.'" *United States v. Lennick*, 18 F.3d 814, 817 (9th Cir.1994) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–57, 108 S.Ct. 2369, 2373–75, 101 L.Ed.2d 228 (1988)). Because defendants do not claim prejudice as a result of the indictment being returned in a closed courtroom, any defect was harmless. In any event, defendants did not raise this issue before the district court, so they waived the right to raise the issue on appeal. *United States v. Kahlon*, 38 F.3d 467, 469 (9th Cir.1994) (objection based upon the failure to return an indictment in open court is not jurisdictional and is waived if not raised prior to trial); Rule 12(b)(1), Fed.R.Crim.P.

## III.

### Commerce Clause

Defendants contend that Congress exceeded its power under the Commerce Clause in enacting the carjacking statute, because carjacking is not sufficiently related to interstate commerce. We recently reject-

ed this argument in *United States v. Martinez,* 49 F.3d 1398, 1400–01 (9th Cir.1995). In so ruling, we joined with every other circuit court that had addressed the question.

The Supreme Court's recent decision in *United States v. Lopez,* — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), does not alter our view. In *Lopez,* the Supreme Court held that Congress exceeded its power under the Commerce Clause when it made it a federal offense for a person to possess a firearm within 1000 feet of a school. *See* 18 U.S.C. § 924(q). The Court noted that "§ 922(q) contains no jurisdictional element which would ensure, through a case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at —, 115 S.Ct. at 1631. It also explained that the statute does not seek to protect "an instrumentality of interstate commerce." *Id.* at —, 115 S.Ct. at 1630. Finally, the Court pointed out that there was no showing of a substantial effect of the prohibited activity on interstate commerce, and Congress had made no findings that there was such an effect. *Id.* at — – —, 115 S.Ct. at 1631–32.

The carjacking statute has a very different background. First, it applies only to the forcible taking of a car "that has been transported, shipped, or received in interstate or foreign commerce." 18 U.S.C. § 2119. *See United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir.1995) (holding that "[18 U.S.C. § 922(g)'s] requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause"). Second, cars are themselves instrumentalities of commerce, which Congress may protect. *See United States v. Watson,* 815 F.Supp. 827, 831 (E.D.Pa.1993) (citing *Perez v. United States,* 402 U.S. 146, 150, 91 S.Ct. 1357, 1359, 28 L.Ed.2d 686 (1971), and upholding § 2119 under the Commerce Clause because it protects an instrumentality of commerce).

Lastly, we note that Congress was not silent regarding the effect of carjacking on interstate commerce. As we stated in *Martinez,* Congress relied on, among other things, "the emergence of carjacking as a 'high-growth industry' that involves taking

stolen vehicles to different states to retitle, exporting vehicles abroad, or selling cars to 'chop shops' to distribute various auto parts for sale." *Martinez,* 49 F.3d at 1400 n. 2 (citing legislative history). That Congress was addressing economic evils of an interstate nature differentiates the carjacking statute from the firearms statute invalidated in *Lopez.* "The possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Lopez,* — U.S. at —, 115 S.Ct. at 1634. Carjacking, on the other hand, is exactly that sort of economic activity, as Congress clearly concluded. We accept that conclusion, and accordingly reject the defendants' contention.

## IV.

### Equal Protection

■ Having complained that carjacking does not impact interstate commerce, defendants Oliver and McMillan next argue that the carjacking statute violates equal protection because it only prohibits the theft of cars previously "transported, shipped, or received" in interstate commerce, and does not prohibit the theft of cars that have not been "transported, shipped or received" in interstate commerce. Because defendants did not raise this issue before the district court, we decline to address it on appeal. *See United States v. Cupa–Guillen,* 34 F.3d 860, 863–64 (9th Cir.1994) (failure to present equal protection challenge to district court constitutes waiver of the claim).

## V.

### Double Jeopardy

Defendants contend that their convictions under § 2119 and § 924(c) violate the Double Jeopardy Clause because both statutes punish the same conduct. This argument is also foreclosed by our recent opinion in *United States v. Martinez,* 49 F.3d at 1402.

## VI.

### Sufficiency of Evidence

■ Defendant Jones argues that there was insufficient evidence to support his car-

jacking conviction under the aiding and abetting theory. Although Jones moved for judgment of acquittal at the close of the government's case, he did not renew the motion at the close of all evidence. We therefore review for plain error. *United States v. Ramirez,* 880 F.2d 236, 238 (9th Cir.1989).

Relying on *United States v. Dinkane,* 17 F.3d 1192 (9th Cir.1992), Jones contends that he was not properly convicted of carjacking because there was no evidence that he possessed a firearm. *Dinkane* involved a conviction for armed bank robbery under 18 U.S.C. § 2113(d), an aggravated form of bank robbery under 18 U.S.C. § 2113(a). We noted that to sustain a § 2113(d) conviction for an aider and abettor, the government must show not only that the defendant knowingly and intentionally aided the act of bank robbery, but also the commission of the aggravating element. *Id.* at 1197. We therefore concluded that the defendant get-away driver could not be convicted of armed bank robbery under an aiding and abetting theory where there was no evidence that he knew— before or during the bank robbery—that the robbers had and intended to use weapons. *Id.* at 1198.

Contrary to Jones' contention, *Dinkane* does not require that the government prove that he actually possessed the firearm. *Dinkane* only requires proof that Jones knew that a co-defendant had and intended to use the firearm during a carjacking, and intended to aid in that endeavor. There was ample evidence of this.

■ The evidence demonstrated that, on the evening of the carjacking, Jones, Oliver and McMillan drove to a liquor store in Jones' car. Oliver testified that when he got into Jones' car, he noticed a gun on the floor of the back seat. Mutanna testified that when defendants approached him in the liquor store parking lot, he could see that Oliver was carrying a gun. Oliver held Mutanna and Mardaie at gunpoint, while Jones and McMillan rifled their pockets. Oliver also used his gun to keep Mutanna behind the store, and fired a shot from Jones' car, as Jones escaped in the Mutanna's car. A reasonable jury could have easily concluded

from these facts that Jones knew Oliver had a firearm, that Jones knew Oliver intended to use the firearm during the carjacking, and that Jones intended to and did aid in that endeavor. Jones' conviction was not plain error.

## VII.

### Voluntary Intoxication Evidence

Defendant Oliver takes issue with the district court's refusal to allow evidence of his voluntary intoxication. We review the exclusion of evidence for abuse of discretion. *United States v. Rahm,* 993 F.2d 1405, 1410 (9th Cir.1993).

■ As the district court correctly concluded, carjacking is a general intent crime, *Martinez,* 49 F.3d at 1401, and voluntary intoxication is not a defense to general intent crimes, *see, e.g., United States v. Sneezer,* 983 F.2d 920, 922 (9th Cir.1992) (voluntary intoxication may be a defense to a specific intent crime, but is not a defense to a general intent crime). Nevertheless, Oliver argues that *United States v. Hartfield,* 513 F.2d 254 (9th Cir.1975), requires that he be allowed to present the evidence. In *Hartfield,* we held that evidence of drug intoxication was admissible because it related to the defendant's sanity during the time of the offense. *Id.* at 259–60.

■ *Hartfield* is not applicable to this case. First, Oliver did not present an insanity defense. Moreover, unlike the proffered testimony in *Hartfield,* Oliver's testimony would only show that he drank heavily on the day of the carjacking. This would not necessarily show that Oliver was incapable of committing the crime charged or appreciating the wrongfulness of his acts. Accordingly, we find no abuse of discretion in the district court's refusal to allow evidence of Oliver's voluntary intoxication.

## VIII.

### Serious Bodily Injury

Defendants also argue that "serious bodily injury" as set forth in § 2119(2) is an element of the carjacking offense which must be

pleaded in the indictment and proved beyond a reasonable doubt at trial. Defendants point out that it was not until the sentencing phase that they became aware that there would be a contention that the case involved serious bodily injury for purposes of § 2119(2). The district court concluded that serious bodily injury is a factor which it was free to consider in sentencing defendants. We agree with the district court.

The Supreme Court has emphasized that the key to distinguishing between elements of an offense and sentencing factors is the legislature's definition of the elements of the offense. *McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986). We therefore must look to the plain language and structure of the statute. *United States v. Young*, 936 F.2d 1050, 1054 (9th Cir.1991). The carjacking statute, 18 U.S.C. § 2119, reads as follows:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

In *United States v. Williams*, 51 F.3d 1004, 1011 (11th Cir.1995), the Eleventh Circuit concluded that "Congress[ ] inten[ded] that subparagraphs (2) and (3) be treated as sentencing enhancement features, and not elements of the offense." According to the Eleventh Circuit, the natural reading of the text—in which the crime of carjacking is defined in the first paragraph and the subparagraphs simply set forth different degrees of sentencing—suggests that the subparagraphs are sentencing provisions. *Id.* We agree with the Eleventh Circuit and conclude that the serious bodily injury and death language in § 2119 exist for sentence en-

hancement purposes. *See also United States v. Ryan*, 9 F.3d 660, 669 (8th Cir.1993), *modified on other grounds*, 41 F.3d 361 (8th Cir.1994) (en banc) (concluding that "if death results" provision of federal arson statute, 18 U.S.C. § 844(i), is sentencing enhancer), *cert. denied*, —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995); *United States v. Patterson*, 38 F.3d 139, 143–44 (4th Cir.1994) (concluding that "if death or serious bodily injury results" language in 21 U.S.C. § 841(b)(1)(C) is sentencing enhancement), *cert. denied*, —— U.S. ——, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995). The plain text of the statute establishes one offense, as defined in the first main paragraph. That definition of the offense is set apart by a comma, followed by the word "shall" and then three sentencing possibilities. This does not establish three separate, substantive offenses.

Our decision in *United States v. Young*, 936 F.2d 1050 (9th Cir.1991), is instructive. In that case, we determined that the weapon provision of 18 U.S.C. § 111 is a sentencing factor, rather than an element of the crime of assaulting a federal officer. The statute under which the defendant was convicted read as follows:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three (3) years, or both.
>
> Whoever, in the commission of such acts uses a deadly or dangerous weapon shall be fined not more than ten (10) years, or both.

18 U.S.C. § 111 (amended 1988). In concluding that Congress intended the weapon provision to be a sentencing factor, we noted that it was not "structurally separated from the rest of the section, indicating that the section contains only one substantive offense." *Young*, 936 F.2d at 1054. Moreover, the "weapon provision [was] not drafted as a stand-alone offense; it incorporate[d] the predicate acts by reference rather than affirmatively setting forth any specific elements."

*Id.; see also Ryan,* 9 F.3d at 667 (use of semi-colons and the conjunction "and," as well as conclusion that latter sections of arson statute regarding resulting bodily injury and death could not stand alone, suggest treatment as a single offense).

Similarly, Congress did not enact § 2119 and its subparts in "structurally separate" provisions. It did not redefine the essential elements of carjacking in subparagraphs (1), (2) or (3), and those provisions could not stand alone, independent of the main paragraph. These factors lead to the conclusion that § 2119 sets forth one offense, with several possible penalties.

Defendants argue that *Young* is distinguishable because, in a subsequent amendment, the weapon provision of § 111 was specifically labelled "Enhanced Penalty," and therefore Congressional intent is clear. It is true that in *Young* we found this subsequent amendment to have "persuasive value." *Young,* 936 F.2d at 1054.[1] But we have similar persuasive evidence of congressional intent in this case. Section 2119 was adopted as part of the overall "Anti–Car Theft Act of 1992" (the "Act"), enacted at a time when carjacking crimes were increasing at an alarming rate. *See* Public Law 102–519, 102nd Congress, 106 STAT 3384 (1992). In the Act, § 2119 and its subparagraphs come directly under the title, "Tougher Law Enforcement Against Auto Theft," and the subtitle, *"Enhanced Penalties for Auto Theft." Id.* (emphasis added). Clearly the title, and undoubtedly the subtitle, suggest an intent that § 2119 set forth enhanced penalties.

Other portions of the legislative history suggest the same conclusion. *See, e.g.,* H.R.Rep. No. 102–851(II), 102nd Cong., 2d. Sess. 14, *reprinted in,* 1992 U.S.C.C.A.N. 2847 ("the Committee adopted an amendment ... increasing the maximum prison term for carjacking to 25 years, instead of 15 years ... when carjacking results in bodily injury. If death results, the penalty could be life in prison and a fine."); H.R.Rep. No. 102–851(II), 102nd Cong., 2d. Sess. 30, 1992 U.S.C.C.A.N. 2863 ("H.R. 4542 also would provide for new and enhanced penalties (including fines) for certain crimes, including armed robberies of motor vehicles ..."); H.R.Rep. No. 102–851(II), 102nd Cong., 2d. Sess. 61, 1992 U.S.C.C.A.N. 2894 ("The Committee's substitute also increased the penalty for 'carjackings' when serious bodily injury occurs over and above the penalties in the bill reported by the Judiciary Committee."). In fact, nothing in our review of the Act or its legislative history even remotely indicates that Congress intended that serious bodily injury and death be additional carjacking elements which must be proved beyond a reasonable doubt at trial.

We also reject defendants' contention that the carjacking statute is similar to the statute construed in *United States v. Gonzalez–Medina,* 976 F.2d 570 (9th Cir.1992). In *Gonzalez–Medina,* we concluded that the provisions of 8 U.S.C. § 1326,[2] dealing with the deportation of aliens, comprised two separate crimes, with separate elements. Unlike the subparagraphs of the carjacking statute, § 1326(a) and (b) stand alone, each with

---

1. Although we recognized that "the view of a later Congress does not establish definitely the meaning of an earlier enactment." *Id.*

2. The statute provides in relevant part:
 (a) Subject to subsection (b) of this section, any alien who—
 (1) has been arrested and deported or excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such

 advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisonment not more than 2 years, or both.
 (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
 (1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisonment not more than 15 years, or both; or
 (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

its own elements and sentence provisions. Subsection (a) states that it is "subject to subsection (b);" while subsection (b) contains the language "[n]otwithstanding subsection (a)." The structure and language of § 1326 is very different from that of the carjacking statute; *Gonzalez–Medina* is not controlling.

 While defendants were not informed through the indictment or at arraignment that they were facing the 25–year maximum, this omission does not amount to a due process violation. *See, e.g., Young,* 936 F.2d at 1053 (indictment need not plead sentencing factor); *LaMere v. Risley,* 827 F.2d 622, 624 (9th Cir.1987) (notice in the information that government will seek sentence enhancement not necessary); *United States v. Dunn,* 946 F.2d 615, 619 (9th Cir.) (prior violent felonies used for sentence enhancement need not be charged in indictment or proved at trial), *cert. denied,* 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991). The evidence at trial suggested that Mutanna suffered injury. The probation department reported in the presentence report that Mutanna suffered a perforated eardrum, causing numbness and some hearing loss, and defendants were given medical reports on the condition. Defendants concede that they were given an opportunity to contest the issue at sentencing. We note that defendants have never demonstrated that the information in the presentence report was inaccurate, or that the district court erred in determining that Mutanna suffered serious bodily injury. Having concluded that serious bodily injury is not an element of the offense, we are compelled to find that defendants received sufficient process for purposes of the Fifth Amendment. *See, e.g., United States v. West,* 826 F.2d 909, 912 (9th Cir.1987) (due process satisfied where prior convictions used for sentence enhancement were detailed in presentence report, defendant did not challenge prior convictions, and defendant did not show information in presentence report was materially false); *United States v. McDougherty,* 920 F.2d 569, 575 (9th Cir.1990) (due process satisfied

where sentencing enhancement factors are alleged in presentence report and proven by a preponderance of evidence), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991).

## IX.

### Sentencing Guideline Issues

 Defendants contend that the district court committed various sentencing errors. We review the district court's interpretation and application of the United States Sentencing Guidelines ("U.S.S.G.") de novo, while we review the district court's factual findings in the sentencing phase for clear error. *United States v. Buenrostro–Torres,* 24 F.3d 1173, 1174 (9th Cir.1994).

### A. Abduction

 In sentencing defendants, the district court applied U.S.S.G. § 2B3.1(b)(4)(A), which provides for a four-level increase "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape." "Abducted" is defined as "forced to accompany an offender to a different location." U.S.S.G. § 1B1.1. Defendants argue that although Mardaie was in the stolen car when Jones drove it away, there was no indication that this facilitated either the offense or the escape. We disagree.

There can be no dispute that Mardaie was forced to accompany Jones as he drove the stolen car away from the crime scene. Jones followed Oliver and McMillan, who left the scene in Jones' car. The evidence easily supports the conclusion that the abduction made a quicker get-away possible and prevented Mardaie from crying out or calling the police. Furthermore, on this record, it is entirely possible that Jones thought he was taking the only living witness away from the crime. The district court's conclusion that Mardaie's abduction facilitated defendants' escape was not clear error.[3]

---

**3.** The district court also concluded that Mardaie's abduction facilitated the offense. Because the district court soundly concluded that the abduction facilitated defendants' escape, we need not reach that issue. *See United States v. Her-*

*nandez–Valenzuela,* 932 F.2d 803, 805 (9th Cir. 1991) (where the district court gives two alternative grounds for enhancement, so long as one ground is proper, no remand is necessary).

We also reject Oliver's and McMillan's suggestion that the district court failed to make the requisite findings regarding their role in the abduction under U.S.S.G. § 1B1.3. That section provides that a defendant may be accountable for the conduct of others that was "in furtherance of the jointly undertaken criminal activity" and "reasonably foreseeable in connection with that criminal activity." *See* U.S.S.G. § 1B1.3, comment. (n. 2). We think it is obvious from the district court's rulings that he found the abduction to be in furtherance of the carjacking and foreseeable to defendants. And, as the discussion above demonstrates, this conclusion was fully supported by the evidence. *See United States v. Slater*, 971 F.2d 626, 633 (10th Cir.1992) (district court need only make generalized statement of its reasons for enhancement, so appellate court may tie sentencing decision to a factual basis in the record).

## B. Obstruction of Justice

 At the sentencing hearing, the district court applied a two-level adjustment to defendant Oliver's sentence concluding that he testified untruthfully at trial. After Oliver filed his notice of appeal, however, the district court issued a Sentencing Order in which it retracted the obstruction of justice enhancement for Oliver. The district court stated that Oliver's testimony at trial not rise to a level warranting enhancement. Although the district court determined that obstruction of justice was not applicable, it did not recalculate Oliver's sentence without the two-level adjustment. Oliver argues that in light of this discrepancy, his sentence should be remanded, and we agree.

The commentary to § 3C1.1 provides that "testimony and statements should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1, comment. (n. 1). We give great weight to the district court's assessment of Oliver's testimony. *See United States v. Barbosa*, 906 F.2d 1366, 1370 (9th Cir.1990) (appellate court should give

"due regard to the opportunity of the district court to judge the credibility of the witnesses"). Because the district court indicated that application of § 3C1.1 was not warranted, we remand this case for recalculation of defendant Oliver's sentence without the two-level adjustment.

## C. Criminal History

Upon remand, the district court is also instructed to reconsider the appropriate Criminal History Category for Oliver. At sentencing, the district court adopted the presentence report finding that Oliver had nine criminal history points and a Criminal History Category of IV. However, the district court's subsequent Sentencing Order suggested that Oliver had only six criminal history points, which would be a Criminal History Category of III. Although this discrepancy may have been nothing more than a clerical error, the district court should clarify the appropriate Criminal History Category and resulting sentence on remand.

## D. Upward Departures

 Finally, defendants argue that the district court erred in departing upward on their sentences. The district court relied on the presentence reports, which recommended an upward departure pursuant to U.S.S.G. § 2K2.4 to a total term of 360 months.[4] However, the probation department, and thus the district court, erred in applying § 2K2.4. Although defendants did not raise the issue before the district court, we address the issue to prevent a miscarriage of justice, and to ensure that defendants' do not serve sentences that exceed the guideline maximum. *See United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (plain error doctrine permits the court to correct errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings"); *see also United States v. Agoro*, 996 F.2d 1288, 1291 (1st Cir.1993)

---

4. U.S.S.G. § 5K2.3, which provides for departure on the basis of "extreme psychological injury" to the victim, did not factor into the probation department's recommended 360–month sentences. The district court suggested that § 5K2.3 was an additional ground for departure, but did not attribute any specific amount of its departure to that basis. Because the district court adopted the presentence reports, it apparently believed that departure to 360 months was justified under § 2K2.4 alone.

(addressing unpreserved legal claim to prevent defendant from serving sentence exceeding guidelines).

Pursuant to U.S.S.G. § 2B3.1(b)(2)(A), a 7-level enhancement would have normally been applicable to defendants' carjacking sentences because a gun was discharged during the offense. However, because defendants were also convicted of using a firearm under § 924(c), which carries a mandatory consecutive five year sentence, defendants' carjacking sentences were not subject to the 7-level enhancement. *See* U.S.S.G. § 2K2.4, comment. (n. 2). U.S.S.G. § 2K2.4 provides for an upward departure in those cases where the guideline range for the underlying offense (without the seven-level enhancement), when combined with the mandatory five-year sentence under § 924(c), produces a total maximum penalty that is less than the maximum of the guideline range that would have been applicable if there was no conviction under § 924(c). The upward departure may not exceed "the maximum of the guideline range that would have resulted had there not been a count of conviction under [§ 924(c) ]." *Id.*

■ There is no dispute that defendants' guideline ranges would have been greater without a conviction under § 924(c). While upward departure was therefore appropriate, that departure could not exceed the maximum of the guideline range that would have been applicable without the § 924(c) conviction. In other words, the maximum combined penalty for the underlying carjacking conviction *plus* the § 924(c) conviction could not exceed the maximum penalty available for the carjacking conviction with the seven-level enhancement. For each defendant, the maximum guideline range absent their § 924(c) conviction (and with the 7-level enhancement) was limited to 300 months (25 years)—the statutory maximum penalty for carjacking resulting in serious bodily injury. *See* U.S.S.G. § 5G1.1 (providing that the guideline range is restricted by the statutorily authorized maximum penalty). Therefore, with an upward departure under § 2K2.4, the *total* sentence for each defendant could not exceed 300 months (or 240 months for the carjacking conviction plus consecutive 60

months for the § 924(c) conviction). That is the maximum penalty that would have been applicable "had there not been a count of conviction under § 924(c)." U.S.S.G. § 2K2.4, comment. (n. 2). Because the district court erred in applying § 2K2.4 to increase defendants' total sentences to 360 months, we vacate and remand for resentencing.

We express no opinion here as to whether, or to what extent, additional departure may be warranted under U.S.S.G. § 5K2.3. Should the district court attribute any amount of departure to § 5K2.3 on remand, it should specify why the psychological injury in this case is more severe than that which would normally occur to a victim of this type of crime. *See* U.S.S.G. § 5K2.3 (departure may be warranted if a victim "suffered psychological injury much more serious than that normally resulting from commission of the offense").

**AFFIRMED in part, and VACATED and REMANDED in part.**