87 F.3d 1324
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jonathan PARIES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Romal Daron HUNTER, aka: Romal Hunter, Defendant-Appellant.
 Nos. 95-50246, 95-50313.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1996.
Decided June 5, 1996.
 
 Before: GIBSON*, JOHN T. NOONAN, JR., and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jonathan Paries and Romal Hunter were tried jointly and now appeal their respective convictions on the same three charges: conspiracy to commit armed bank robbery, 18 U.S.C. § 371, 18 U.S.C. § 2113(a)(d); aiding and abetting armed bank robbery, 18 U.S.C. §§ 2(a), 2113(a), (d); and aiding and abetting the use of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1), 924(d), 2(a). We AFFIRM their convictions.
 
 BACKGROUND
 
 3
 Around 2:00 p.m. on November 8, 1994, three men wearing ski masks entered and robbed the Downey Federal Savings and Loan Association (the "Bank") in Torrance, California. They struck and intimidated the tellers, threatening them with guns, and escaped with almost $20,000. Soon after the robbers fled, Torrance police began trailing a Cadillac, which police testified had emerged from a residential area near the Bank. A high-speed chase followed, ending when the police forced the Cadillac to crash. The driver escaped on foot as a shoot-out began. Two of the three remaining suspects--Paries in the front seat and a juvenile in the back--were shot and wounded. The third, Hunter, crawled out of the car with a bag of cash under his clothing. All three were arrested at the scene.
 
 
 4
 Following the arrests, officers found a loaded .357 revolver and a large bag of cash at the crash scene. Another officer found a stolen Oldsmobile, still running, parked in the neighborhood near the Bank. A yellow shopping list the owner had left in the stolen car contained Paries' fingerprints. Hunter's fingerprints were found inside the Bank on the entrance door.
 
 
 5
 Approximately one hour after Hunter's arrest Officer Robert Bowman spoke to Hunter in a booking room at the station. Pursuant to an unwritten policy of "courtesy" between the Torrance police department and the FBI regarding bank robbery suspects, Bowman did not inform Hunter of his Miranda rights. He told Hunter that the two passengers had been shot and that one was probably dead. He asked Hunter the names of the men in the car. Hunter identified the two shooting victims and said he did not know the name of the person who escaped. The court suppressed Hunter's statements to Bowman for violating Miranda.
 
 
 6
 Hunter also made three separate statements to FBI agent DeSilva, as follows:
 
 
 7
 (i) Twenty to sixty minutes after meeting with Bowman Hunter was interviewed by FBI Agents DeSilva and Jacqueline Ruiz in a holding cell. Bowman was not present. DeSilva declared that he gave Hunter a Miranda form which Hunter read aloud, said he understood, and signed. Hunter then confessed to robbing the Bank with three friends, including Paries. Hunter said they used a Cadillac and had a gun in the car in preparation for the robbery. He stated that Paries had stayed in the car throughout the robbery. At the time DeSilva believed that one of the passengers shot would not survive and told Hunter so. DeSilva declared he did not say this to elicit any statement from Hunter.
 
 
 8
 (ii) Fifteen to twenty minutes after Hunter's confession, DeSilva returned to clarify some points. DeSilva told Hunter he still had his Miranda rights; Hunter said he understood this. Hunter then explained that the group had driven the Cadillac to the neighborhood, switched cars, driven the Oldsmobile to the Bank and then back to the Cadillac, which they used as the getaway car. DeSilva then told Hunter that the seriously wounded person would probably survive, information DeSilva had learned between meetings. Hunter said he would not have confessed had he known that person was alive, and that if that person found out "it could cause him a problem."
 
 
 9
 (iii) As DeSilva transported Hunter to the federal courthouse the next day, DeSilva thanked him for being cooperative. Hunter then said that contrary to his previous statement, Paries had not stayed in the car but had entered the Bank. Hunter denies the conversation.
 
 
 10
 Judge Hupp denied pretrial motions from Hunter and Paries to suppress Hunter's statements to DeSilva, concluding that all three statements were voluntary. After trial the jury convicted Hunter and Paries on all three counts charged.
 
 ANALYSIS
 
 11
 (1) Bruton Challenge to Hunter's Redacted Statement
 
 
 12
 Paries claims that his Sixth Amendment right to confront an adverse witness was violated because DeSilva's testimony and reports about Hunter's confession were not properly redacted to remove incriminating references to Paries. Hunter testified at the suppression hearing but not at trial. At trial DeSilva testified about Hunter's statements to him. DeSilva referred to Hunter's coconspirators only as "acquaintances" or "friends," not mentioning Paries or others by name. De Silva's FBI reports summarizing his conversations with Hunter were also redacted to refer to "friends" rather than to individual names. The jury was instructed not to consider Hunter's statements to DeSilva as evidence with respect to Paries.
 
 
 13
 Bruton v. United States, 391 U.S. 123, 126 (1968), held that admission at a joint trial of a facially incriminating statement of a non-testifying codefendant violated the petitioner's right of confrontation, despite jury instructions not to consider those statements. Bruton applied a narrow exception for "powerfully incriminating" statements which "expressly implicated" the defendant. Richardson v. Marsh, 481 U.S. 200, 208 (1987). Where the statement is not facially incriminating but becomes so only when linked with evidence introduced later at trial and the statement is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," its admission with a proper limiting jury instruction does not violate the Sixth Amendment. Id. at 211; United States v. Enriquez-Estrada, 999 F.2d 1355, 1359 (9th Cir.1993). The Marsh Court "express[ed] no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." Marsh, 481 U.S. at 211, n. 5. In Enriquez-Estrada the Ninth Circuit found that a statement neutrally redacted to replace names of codefendants with the word "individuals" was not facially incriminating but became so only when linked with subsequent testimony by a DEA agent.
 
 
 14
 We review a Bruton challenge de novo. Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir.1986). Applying Enriquez-Estrada to Paries' case we conclude that Hunter's neutrally redacted statements and DeSilva's testimony about those statements are not facially incriminating but became so only when linked with subsequent testimony at trial. Even without Hunter's statements and DeSilva's testimony about them evidence was adduced that Paries was involved in planning the robbery. For example, a loan officer testified that shortly before the robbery he saw two nervous black males in a car in the Bank's parking lot and that the passenger nodded at him. In a photo spread a month and a half after the robbery the loan officer identified Paries as that passenger. Neither the redacted statements nor DeSilva's testimony about them facially incriminated Paries. Paries was implicated only when Hunter's statements were linked with other evidence introduced at trial, including fingerprint evidence, Paries' own testimony and testimony from police and other witnesses.
 
 
 15
 (2) Admission of Hunter's Confessions
 
 
 16
 Paries and Hunter appeal the district court denial of their separate motions to suppress Hunter's statements to DeSilva as involuntary. Denial of a motion to suppress is reviewed de novo, United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993), as is the voluntariness of a confession. United States v. Harrison, 34 F.3d 886, 890 (9th Cir.1994). The preponderance of the evidence standard applies to proof that a statement was voluntary. Id. In reviewing whether a statement was voluntary we must consider "the totality of the circumstances and determine whether 'the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.' " Id. at 890 (citations omitted).
 
 
 17
 Paries has no standing to object to admission of Hunter's allegedly involuntary statements as a violation of Paries' own Fifth Amendment rights. A defendant has no standing to assert another's Fifth Amendment rights on the other's behalf, United States v. Ward, 989 F.2d 1015, 1020 (9th Cir.1992), let alone as a violation of the defendant's own rights.
 
 
 18
 Hunter's first statement to DeSilva is not the fruit of an involuntary statement to Bowman and is thus not tainted. The district court suppressed Hunter's statement to Bowman for Miranda violations but did not determine whether it was voluntary. Simple failure to provide a Miranda warning does not alone taint the investigatory process. The Supreme Court has
 
 
 19
 declined to treat the failure to admonish a defendant of his right to counsel during interrogation and his right to remain silent as the equivalent of actual coercion which would taint and render inadmissible a subsequent voluntary statement made after a proper warning and waiver.
 
 
 20
 United States v. Lewis, 833 F.2d 1380, 1386 (9th Cir.1987), citing Oregon v. Elstad, 470 U.S. 298, 318 (1985).
 
 
 21
 To be truly coerced Hunter's statement to Bowman had to be more than "merely technically involuntary for having preceded Miranda warnings," United States v. Jenkins, 938 F.2d 934, 941 (9th Cir.1991). When he spoke to Bowman Hunter may have been upset from the car chase, shoot-out and seeing his accomplices wounded but these events were part of the attempt to capture Hunter, not to coerce him. See Greenawalt v. Ricketts, 943 F.2d 1020, 1027 (9th Cir.1991), cert. denied, 506 U.S. 888 (1992). The district court credited Bowman's version of his interview with Hunter, where he simply told Hunter what he knew about Hunter's accomplices. The court correctly concluded that Bowman's questioning was not coercive. Because Bowman's questioning was not truly coercive we need not consider whether it tainted Hunter's first confession to DeSilva.
 
 
 22
 None of Hunter's statements to DeSilva were involuntary. By the time he talked with DeSilva, Hunter may well have been distressed by what Bowman told him about the accomplices' condition. But Hunter had already begun to discuss his own involvement in the robbery with DeSilva when, 15 or 20 minutes into their first meeting, DeSilva first mentioned the accomplices' conditions in response to Hunter's unsolicited question about the two men. Hunter then continued to make statements to DeSilva. About the time the second FBI interview ended DeSilva told Hunter that the accomplices were expected to survive, as DeSilva had learned between interviews. Hunter's will was not overborne in any of his statements to Bowman or DeSilva.
 
 
 23
 (3) Sufficiency of Evidence against Paries
 
 
 24
 At the close of the government's evidence, Paries moved for acquittal on the charges of armed bank robbery and using or carrying a firearm during a crime of violence, arguing that evidence was insufficient to prove those two charges. The district court denied the motion. Paries now seeks reduction of his conviction for the first charge to unarmed bank robbery and reversal of his conviction on the second charge.
 
 
 25
 Denial of a motion for judgment of acquittal is reviewed by considering the sufficiency of the evidence in the light most favorable to the prosecution to determine "whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Buena-Lopez, 987 F.2d 657, 659 (9th Cir.1993). The reviewing court must also respect the jury's determination of credibility and its drawing of reasonable inferences from the facts by assuming that the jury resolved all conflicting evidence in such a way as to support the verdict. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir.1995).
 
 
 26
 To convict Paries for the aggravating element of armed robbery, evidence was required that he "knew--before or during the bank robbery--that the robbers had intended to use weapons." United States v. Oliver, 60 F.3d 547, 551 (9th Cir.1995). In a case involving a getaway driver, to convict the driver of aiding and abetting an armed bank robbery the government had to show that the defendant
 
 
 27
 knowingly and intentionally aided and abetted the underlying offense of unarmed bank robbery and then show that the defendant knowingly and intentionally aided the commission of the aggravating element.
 
 
 28
 United States v. Dinkane, 17 F.3d 1192, 1197 (9th Cir.1992). The aggravating element under 18 U.S.C. § 2113(d) is "assaulting of any person or the putting of a life or lives in jeopardy by the use of a dangerous weapon or device". The government is not required to prove "that an aider and abettor actually possessed the firearm" but only that the defendant "knew that a codefendant had and intended to use the firearm during [the crime], and intended to aid in that endeavor." Oliver, 60 F.3d at 551. "One who aids and abets a bank robbery can be convicted as a principal." Dinkane, 17 F.3d at 1196.
 
 
 29
 In addition to Hunter's statement that a gun was in the car in preparation for the robbery and that Paries was in that car before and after the robbery, other evidence showed that Paries aided and abetted the use of weapons. There is evidence that guns were used to threaten tellers. There is evidence that the robbery was well organized, like "clock-work." A gun was found at the crash scene. A loan officer identified Paries before trial as having been parked outside the Bank shortly before the robbery. A Bank neighbor saw four black men, two in a Cadillac and two in another car, driving slowly, parking and conversing in the adjacent neighborhood an hour before the robbery. Paries' fingerprints were found on a shopping list in the other car. Even though there is no evidence that Paries was in the Bank, viewing all of the evidence in the light most favorable to Paries the jury could have reasonably concluded that Paries was involved before the robbery and knew that a gun would be used. Deference is due to the jury's apparent discrediting of Paries' contrary version of events.
 
 
 30
 Even if Paries did not know about the gun, it was reasonably foreseeable that a coconspirator would use a gun in the "takeover" (versus a "note-passing") bank robbery. Thus Paries could be convicted as an aider and abettor for violating section 924(c) under a Pinkerton conspiracy theory. See United States v. Johnson, 886 F.2d 1120, 1123 (9th Cir.1989), cert. denied, 494 U.S. 1089 (1990), citing Pinkerton v. United States, 328 U.S. 640 (1946). "An abettor's criminal intent may be inferred from the attendant facts and circumstances and need not be established by direct evidence." United States v. Cloud, 872 F.2d 846, 850 (9th Cir.) (citations omitted), cert. denied, 439 U.S. 1002 (1989). The government also "need not prove that the defendant was aware of every detail of the impending crime ... nor that he be present at, or personally participate in, committing the substantive crime. United States v. Smith, 832 F.2d 1167, 1170 (9th Cir.1987). Paries' insufficiency of evidence argument has no merit.
 
 
 31
 (4) Admission of Evidence on Teller's Pregnancy
 
 
 32
 The court correctly denied Paries' pretrial motion to exclude evidence that teller Wendy Amado was seven and a half months pregnant when one of the robbers struck her in the head with a pistol. Evidentiary rulings are reviewed for abuse of discretion and should not be reversed absent prejudice. City of Long Beach v. Standard Oil Co., 46 F.3d 929, 936 (9th Cir.1995). The court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. "Unfair prejudice" occurs when the evidence has the "undue tendency to suggest decision on an improper basis." United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir.1990) (quoting Fed.R.Ev. advisory committee note), cert. denied, 502 U.S. 922 (1991).
 
 
 33
 An element of the crime of aiding or abetting a bank robbery is taking money "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). Evidence that Amado was hit in the head with a pistol goes directly to the nature and scope of the intimidation and violence used in the robbery. Evidence that she was visibly pregnant when struck is not unfair; it simply provides even stronger proof of the nature of intimidation and violence used.
 
 
 34
 (5) The Model Jury Instruction on Reasonable Doubt
 
 
 35
 The trial court used this circuit's model jury instruction for reasonable doubt, which defines the necessary proof as that which "leaves you firmly convinced that the defendant is guilty." See 1992 Manual of Model Criminal Jury Instructions for the Ninth Circuit, instruction 3.03. (1992 ed.). A district court jury instruction on reasonable doubt is reviewed de novo "to determine whether it was an accurate statement of the law." United States v. Velasquez, 980 F.2d 1275, 1278 (9th Cir.1992), cert. denied, 508 U.S. 979 (1993).
 
 
 36
 This court has upheld the "firmly convinced" language of the model instruction, finding that it does not "indicate to the jury that the prosecutor had a lesser burden than that implied by the use of the term 'reasonable doubt' standing alone." Velasquez, 980 F.2d at 1278. This court has also stated clearly that "refusal to give the 'two hypotheses' jury instruction is not error" when the instruction used described the government's obligation and taken as a whole was not misleading or inadequate to guide jury deliberations. United States v. Grayson, 597 F.2d 1225, 1230 (9th Cir.), cert. denied 444 U.S. 873 & 875 (1979). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Victor v. Nebraska, 114 S.Ct. 1239, 1243 (1994). The district court choice of jury instruction on reasonable doubt properly applied the law of this circuit.
 
 CONCLUSION
 
 37
 We conclude that (1) admission of Hunter's redacted confessions and De Silva's testimony about those confessions did not violate Paries' right to confront an adverse witness; (2) Hunter's statements to DeSilva were voluntary and the district court did not err in denying Paries' and Hunter's motions to exclude those statements as involuntary; (3) evidence was sufficient to sustain all of Paries' convictions; (4) the district court did not abuse its discretion in admitting evidence of teller Amado's pregnancy; and (5) the district court did not err in its choice of jury instruction on reasonable doubt.
 
 
 38
 The convictions of both Paries and Hunter are AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, United States Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3