94 F.3d 654
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee
v.
William Sherry WALLETTE, Defendant-Appellant.
 No. 95-30201.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1996.
Decided Aug. 16, 1996.
 
 1
 Before: FLETCHER, NOONAN and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 William Sherry Wallette appeals his conviction and sentence for possession with the intent to distribute methamphetamine and marijuana in violation of 21 U.S.C. § 841(a)(1). Specifically Wallette objects that the district court erred in denying his pretrial motion to reopen a suppression hearing and in determining the length of his sentence. We AFFIRM the district court.
 
 FACTS
 
 4
 Around 4:30 p.m. on Sunday, March 27, 1994, William Sherry Wallette was inside the Town Pump in Wolf Point, Montana, on the Fort Peck Indian Reservation. Deputy Michael Matthews, an off-duty officer with the Roosevelt County Sheriff's Department who had received a reliable tip that Wallette would be delivering drugs to the reservation that weekend, spotted a vehicle matching the description of Wallette's truck in the Town Pump parking lot. Matthews flagged down a passing sheriff car for back up, entered Town Pump alone and asked for Billy Wallette. Wallette identified himself and complied with Matthews' request to step outside. There Matthews identified himself as a law enforcement officer and informed Wallette of the tip.
 
 
 5
 By this time the two deputies Matthews had flagged down, Officers Byrum and Hilde, were present. Matthews asked permission to search Wallette's truck. Wallette refused. Matthews asked if Wallette had any weapons. Wallette said a shotgun was in his truck which Matthews then tried to open but found locked. Wallette unlocked the door for Matthews, who testified that he did not observe where Wallette had pulled the keys from. Byrum also testified that he had not seen Wallette retrieve or replace the keys when Wallette unlocked the truck.
 
 
 6
 After Matthews retrieved the gun from the truck he asked Byrum to pat down Wallette for weapons. Byrum took Wallette's hip knife and found a bulge in Wallette's jacket pocket. Byrum testified that he could tell the bulge was keys but that he also felt a square object which he thought might be a knife. Byrum retrieved the keys and attached square item from the pocket and "saw that it was a pipe by looking at it.... It took about a second to figure out what it was." Wallette was immediately placed under arrest and advised of his tribal rights, which differ from Miranda rights in that counsel is at the expense of the accused.
 
 
 7
 The Fort Peck Tribal Executive Board, representing the Sioux and Assiniboine tribes, had approved Byrum and other Roosevelt County Sheriff officers "to enforce provisions of the Tribes Comprehensive Code of Justice as authorized under the Title XII Section 208." Section 208 authorizes Roosevelt County Sheriff officers to make arrests for tribal offenses which occur in cities or on highways within the exterior boundaries of the reservation. Section 208 also provides that authorized state officers arresting an Indian under the section "shall promptly deliver the individual to the Tribal Court or to the appropriate Tribal law enforcement officers." The Roosevelt County Sheriff testified that for security reasons, prisoners were only transported to the reservation jail at Poplar from the Roosevelt County Jail in Wolf Point when two officers were on duty in Wolf Point or when one was ending a shift and, off duty, could transport the prisoner.
 
 
 8
 Wallette was booked into the Roosevelt County Jail at 5:45 on Sunday night. He was questioned for five to ten minutes by Deputy Buzzell in Matthews' presence. Matthews testified that Wallette told Buzzell "he had a little weed, a little speed for his personal use" in the truck. These statements were later passed on to FBI agent Wixson who used them to apply for a search warrant for the truck. In the early hours of Monday morning, Wallette was transported to the Poplar Jail by Bureau of Indian Affairs Officer Four Bear.
 
 
 9
 Wallette's arrest form identifies the charge as "unlawful possesion [sic] of dangerous drugs, 45-9-102-5(M)," a Montana Criminal Code reference. The form also contains instructions to hold for "W.P. Tribal." Officer Matthews testified that Wallette was arrested on Tribal charges and that Matthews knew he was investigating either a federal or tribal crime. Wallette's case was turned over to FBI Agent Wixson and Wallette was subsequently indicted on federal narcotics charges.
 
 PROCEEDINGS
 
 10
 Wallette's first court-appointed counsel, Arthur Thompson, filed a two-issue motion to suppress evidence which was denied by written order issued August 2, 1994 following briefing and a hearing. Shortly thereafter Michael Donahoe, Wallette's current counsel, assumed Thompson's duties and filed a motion to continue the trial date which was granted August 19, 1994. Donahoe filed a second, untimely motion to continue the trial and to reopen the suppression hearing, arguing that Thompson had failed to include several important arguments in the first motion to suppress. Following written objections and argument by counsel the motion to reopen was denied on October 13, 1994.
 
 
 11
 On the trial date and after the jury had been sworn Wallette orally requested a hearing under Jackson v. Denno, 378 U.S. 368 (1964), as to whether his statements to officers at his arrest were voluntary. Following that hearing, which occurred on November 7, 1994, the court denied Wallette's oral motion to suppress and Wallette entered a plea agreement before trial recommenced. At sentencing on June 2, 1995, the court overruled Wallette's objection that he should have been sentenced within a 12-18 month range, sentencing him instead to 24 months in prison plus four years supervised release.
 
 ANALYSIS
 
 12
 A. Denial of Motion to Reopen the Suppression Process
 
 
 13
 Donahoe's motions to reopen the suppression hearing raised three arguments which he claims previous counsel did not raise: that Wallette's arrest was illegal because he was not subject to state jurisdiction for state offenses committed on the reservation, that the failure to deliver Wallette promptly to tribal authorities violated his rights under the Tribal Code and the U.S. Constitution and that the failure to administer Miranda warnings resulted in a defective federal search warrant application because incriminating statements Wallette made after waiving his tribal notification rights were used to apply for the federal warrant.
 
 
 14
 The district court's denial of a pretrial motion to reconsider its suppression determination is reviewed for abuse of discretion. United States v. Hobbs, 31 F.3d 918, 923 (9th Cir.1994). The district court abuses its discretion if it declines to reconsider when several new issues have become relevant since the time of its original ruling. Id.
 
 
 15
 At the October 13, 1994 hearing on the motion to reopen the suppression hearing the court said that it would take the matter under submission. Later that day, the court issued a written order denying Donahoe's motion to reopen. However, the court's final Order addresses the issue of Miranda warnings and promptness of delivery and makes clear that Wallette was properly held on Tribal charges. The voluntariness hearing transcript reveals that each of the three "additional" issues raised in the motion to reopen the suppression proceedings was argued at the Jackson v. Denno voluntariness hearing on November 7, 1994.
 
 
 16
 Wallette's counsel may have formulated new strategies, but no change in circumstances gave rise to new issues between the time the court denied the motion to suppress and its refusal to reconsider that denial. Review of the evidence at the Jackson v. Denno hearing and at the earlier hearings on suppression and the motions to reopen the suppression process indicates that the court did not abuse its discretion in denying those motions.
 
 B. Sentencing
 
 17
 The legality of a sentence under the sentencing guidelines is reviewed de novo. U.S. v. Manning, 56 F.3d 1188, 1200 (9th Cir.1995), as is the district court's interpretation of the sentencing guidelines. United States v. Oliver, 60 F.3d 547, 554 (9th Cir.1995).
 
 
 18
 The statutory minimum term of imprisonment for Wallette's crimes of conviction under 21 U.S.C. § 841(a)(1) is five years for Count One, possession with intent to distribute methamphetamine. Count Two, possession with intent to distribute marijuana, carries an imprisonment term not to exceed five years. The sentencing range under USSG § 2D1.1 and § 3D1.2 is 12-18 months, taking into account a reduction for acceptance of responsibility and other factors.
 
 
 19
 The "Safety Valve" provision of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, September 13, 1994, provides that 18 U.S.C. § 3553 is to be amended by adding a subsection (f) which requires that when sentencing for offenses under U.S.C. § 841 and other sections, "the court shall impose a sentence pursuant to guidelines promulgated by the [Sentencing Commission] ... without regard to any statutory minimum sentence " if the court finds at sentencing that the defendant meets certain mitigating circumstances. Section 80001(a) (emphasis added). Section 80001(b)(1)(B) provides:
 
 
 20
 In the case of a defendant for whom the statutorily required minimum sentence is 5 years, such guidelines and amendments to guidelines issued under subparagraph (A) shall call for a guideline range in which the lowest term of imprisonment is at least 24 months.
 
 
 21
 Section 80001(a) was codified at 18 U.S.C. § 3553(f). Section 80001(b)(1)(B) appears as an historical note to 28 U.S.C. § 994, which discusses the duties of the Commission.
 
 
 22
 The Presentencing Report and the district court concluded that the Safety Valve provision required a sentence for Wallette of at least 24 months, notwithstanding the 12-18 month range called for under the Guidelines Sentencing Table, Chapter 5, Pt. A, for an offense level of 13 and criminal history category of I. The adjusted offense level of 13 was reached by reducing the base level of 16 required under USSG § 2D1.1(c)(12) for the quantity of drugs in question by 3 points because of acceptance of responsibility under USSG § 3E1.1. The criminal history adjustment was made under USSG § 4A1.1(c).
 
 
 23
 Wallette argues that he should have been sentenced within the 12-18 month range, notwithstanding the 24 month minimum required by the Safety Valve provision. He relies on published Remarks of the Commission Chair which neither appear nor are referenced in the Guidelines Manual. See Revisions to the Sentencing Guidelines for the United States Courts, 56 BNA Criminal Law Reporter [CrL] 2008, October 19, 1994. The Guidelines Manual, in the Commentary to USSG § 5C.1.2, refers instead to H.R.Rep. No. 460, 103d Cong., 2d Sess. 3 (1994), which reiterates the clear language of the public law requiring the guideline range not to go below 24 months if the statutory minimum sentence is five years: "The Committee intends that the Commission implement its directive so that the guideline range applicable to the least culpable defendants eligible under subsection (f) goes no lower than two years." H.Rep. 460, Background; see also H.Rep. 460, pt. 3.
 
 
 24
 This court must follow the clear unambiguous language of a statute unless Congress has clearly expressed a contrary legislative intent. Pyramid Lake Paiute Tribe v. U.S. Department of the Navy, 898 F.2d 1410, 1417 (9th Cir.1990). Here unambiguous language of a public law is fully supported by clearly expressed legislative intent. Although the language of the public law is not actually codified as part of a statute, it is part of a Congressional enactment and should be accorded similar deference.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3