UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael E. THOMAS, Defendant–
Appellant.

No. 92–10456.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1994.

Aug. 9, 1994.

Elliot R. Peters, San Francisco, CA, for defendant-appellant.

Jonathan Conklin, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Elliot R. Peters, James E. Boasberg, Keker & Van Nest, San Francisco, CA, for defendant-appellant Michael E. Thomas.

Before: HUG, SCHROEDER, and FERNANDEZ, Circuit Judges.

SCHROEDER, Circuit Judge:

Michael Thomas appeals his conviction and sentence for twenty counts of mail fraud in violation of 18 U.S.C. §§ 371 and 1341. The alleged fraud occurred when the defendant reported false prices to his customers in the course of his produce marketing operations. We reverse and remand for a new trial, because we find that the district court erred in limiting the evidence that defendant was permitted to introduce on the key issue of intent to defraud.

## I. BACKGROUND

In 1987 and 1988, Thomas was the marketing coordinator of a produce packing and marketing company that brokered sales of fruit between fruit growers and retail merchants. His company, Christian Salvesen Packing and Marketing ("CSPM") endeavored to obtain the highest possible price for growers' fruit, and then remitted the proceeds to the growers after deducting its own percentage commission and other fixed costs.

In early July 1987, Thomas implemented what he termed an "averaging scheme" on behalf of CSPM. When fruit prices were low, CSPM would report an artificially high price to the growers, and contribute its own money to make up the difference. When prices were high, on the other hand, CSPM would report an artificially low price to the growers, and retain some of the proceeds for itself. Thomas asserted that he took "concrete steps" to make sure that no grower lost money from the scheme, and the uncontested accounting evidence showed that the growers came out ahead by approximately $175,980.

As a result of this scheme, Thomas was indicted for mail fraud in 1991. The superseding indictment charged that in 1987 and 1988, Thomas had operated a "scheme to defraud" growers in violation of 18 U.S.C. §§ 371 and 1341 by misrepresenting the actual prices received for their fruit. The government contended that the scheme was intended to defraud the growers by taking money that was rightfully theirs.

The superseding indictment specifically described overpayments as well as underpayments as part of this fraudulent scheme. It alleged that by overpaying the growers in some instances, the defendant deprived the growers of knowledge of the exact price for which their product was sold, and "the opportunity to accurately evaluate the ability of CSPM ... to sell their fruit at the highest possible price." However, the mail fraud counts set forth in the indictment included only mailings of underpayments.

■ In a mail fraud prosecution, the government must prove beyond a reasonable doubt (1) that a defendant devised "any scheme or artifice to defraud," and (2) that the defendant used the mails or caused the mails to be used in furtherance of the scheme. *United States v. Dadanian*, 818 F.2d 1443 (9th Cir.1987), *modified on rehearing*, 856 F.2d 1391 (9th Cir.1988); *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). In this case, the principal issue at trial was whether the scheme that Thomas had devised was one "intended to defraud." It is important in this case that at the time of defendant's actions, a deprivation of honest services and fair dealing did not constitute a mail fraud offense; rather, the defendant must have intended to deprive his victims of money or property. *See McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), *overruled by statute*, 18 U.S.C. § 1346 (Supp.1994).

The defendant maintained at trial that the purpose of the system was not to defraud the growers of money, but to even out fluctuating crop prices in order to assuage grower discontent. To rebut the government's evidence of intent, the defendant wished to elicit testimony from individual growers regarding their business dealings with CSPM and their reactions to the averaging scheme, and to submit evidence that the growers actually came out ahead as a result of the scheme. The district court, however, limited the defendant's evidence of intent to the expert testimony of one accountant, who testified that the specific growers the government had

named in its indictment had received overpayments as well as underpayments, and that during the years in question those growers had in fact come out ahead by more than $175,000 as a result of the erroneous reporting.

Defendant's first trial ended in a mistrial on January 30, 1992, because the jury could not reach a verdict. On March 11, 1992, a second jury convicted defendant of 19 counts of mail fraud and aiding and abetting, and one count of conspiracy to commit mail fraud.

## II. EVIDENTIARY RULINGS

Thomas' major and most persuasive contention in this appeal is that the trial court erred in precluding him from putting on further evidence relevant to the purpose of the scheme and the issue of intent to defraud. The government selected some of the defendant's alleged "victims," named them in the indictment and then called them as witnesses to testify concerning the effects of the underpayments they had received. The defendant was refused permission to cross-examine the prosecution's witnesses about the overpayments they had received. The district court also refused to allow the defendant to call other growers affected by the scheme, who may have been less hostile to the defendant than the government's witnesses, to testify about the benefits they had received from overreporting. In this manner, the jury was prevented from hearing any direct evidence either of the growers' receipt of benefits, or of their overall perceptions of the scheme.

The government nevertheless contends that the court's refusal to permit Thomas to develop this evidence was not error, because the testimony of any growers not named in the indictment would have been irrelevant. It further argues that the expert's testimony provided a full defense with respect to named growers, and suggests that the direct grower evidence of overpayments defendant wished to elicit on cross examination would have been cumulative.

Beyond its conclusory statements, the government does not explain why direct evidence from growers not named in the indictment regarding the impact that the scheme had on them is irrelevant to the defendant's intent in devising the scheme. In order to obtain a conviction in this case, the government had to prove not only that the defendant had used the mails in order to defraud the individuals named in the indictment of money or property, but that he had devised a "scheme" that was intended to defraud those individuals. See Dadanian, 818 F.2d 1443. The "scheme" described in the indictment unquestionably involved individuals other than those named in connection with specific mailings, and there is no basis for concluding that the scheme defendant had devised was intended to impact unnamed individuals any differently than those the government chose to name.

■ In a case very similar to this one, the Eighth Circuit reversed a defendant's mail fraud conviction because the district court had prevented the defendant from introducing evidence relevant to his intent in making false statements on insurance applications. United States v. Garvin, 565 F.2d 519 (8th Cir.1977). Defendant in that case was charged with making misrepresentations on some insurance applications in order to obtain additional policies. It was undisputed that defendant had in fact made false statements regarding the number of policies he owned on some of his insurance application forms. However, defendant contended that he had not intended to defraud the insurance companies when he made those false statements, and sought to introduce evidence that he had answered similar questions honestly on applications for other policies. As in this case, the government in Garvin argued that truthful statements to other insurance companies were irrelevant to defendant's intent with respect to the insurance companies he was accused of defrauding. The Eighth Circuit disagreed, and reversed Garvin's conviction. Similarly, the testimony of growers impacted by Thomas' scheme but not named in the indictment would have been relevant to defendant's intent in devising the false reporting scheme.

The Federal Rules of Evidence provide that "relevant evidence [is] generally admissible." Fed.R.Evid. 402. In addition, the general rule in mail fraud prosecutions is

that the defendant "should be permitted to offer any evidence which bears directly and not too remotely on his intention [to defraud], and the court should not exclude any evidence offered by accused which tends to refute the fraudulent intent charged." 72 C.J.S. *Postal Service* § 41(c) (1987). These rules reflect the fact that individuals accused of criminal behavior should be permitted to present, within reason, the strongest case they are able to marshal in their defense.

In this case, the jury was faced with a difficult issue of the defendant's subjective intent. There were no substantial countervailing justifications for limiting the relevant evidence that the jury could consider by excluding testimony of other growers. *See* Fed.R.Evid. 403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). The district court found no such justification. It excluded the evidence, erroneously, as irrelevant.

■ For the same reasons, the district court should have allowed the defense to cross-examine the named growers with respect to overpayments. The district court apparently agreed with the government that such testimony would be cumulative of the expert's testimony the court did allow. As the only direct evidence concerning the overpayments, however, the growers' testimony would not have been cumulative of the abstract expert testimony proffered by the defendant's accountant. When trying to reach a conclusion about the elusive issue of intent, the subjective perceptions of the people most intimately involved with defendant and his averaging scheme could have had a significantly different impact on the jury than the expert's bare conclusion that these growers had not lost money.

Relevant case law in fraud prosecutions supports the defendant's position that he should have been permitted to develop fully and fairly all of the evidence that would tend to exonerate him. In *United States v. Foshee*, 569 F.2d 401 (5th Cir.), *amended*, 578 F.2d 629 (5th Cir.1978), the Fifth Circuit reversed a defendant's mail fraud conviction because the district court had sustained the government's objection to a portion of the defendant's closing argument in which the defendant sought to emphasize that he lacked the requisite intent to defraud the victim banks in that case, as evidenced by the fact that none of the banks had lost any money. Significantly, the defendant in that case had been permitted to introduce direct evidence that the banks involved in the charged scheme had not lost money. This, however, did not render the district court's limitation on the defendant's closing argument harmless. In this case, of course, the prejudice was greater than in *Foshee* because both defense argument and evidence were restricted. *See also United States v. Ethridge*, 948 F.2d 1215 (11th Cir.1991) (in mail fraud prosecution, the defendant should have been permitted to introduce evidence that items legitimately claimed on an insurance claim form exceeded the policy limits in an attempt to defeat the inference that defendant had intended to defraud the insurance company with false claims); *Garvin*, 565 F.2d 519 (defendant should have been permitted to introduce statements made to insurance companies not named in the indictment on the issue of intent).

The prejudice from defendant's inability to present fact witnesses and cross-examine government witnesses on overpayments as well as underpayments was exacerbated by prosecution statements that, purposefully or not, may have misled the jury. During its summation, the prosecution repeatedly undermined the defense by stating that "averaging" payments is "no defense" to mail fraud, when in fact averaging is a defense insofar as it is relevant to intent. *See Foshee*, 569 F.2d at 403 (noting that court had compounded error of limiting defense argument by instructing jury that "the 'success or failure of a scheme to defraud is immaterial,' without an accompanying admonition that it was relevant to the issue of intent"). In addition, the prosecutor stated, without evidentiary support, that no other fruit marketing company had engaged in a similar averaging scheme. This occurred after the prosecution had informed a defense witness, who

could have testified that such averaging was a common industry practice, that he was under investigation, thereby prompting the witness to invoke his Fifth Amendment right to refuse to testify. The prosecution also supplemented its own evidence of intent with Rule 404(b) evidence of a previous unrelated episode that the government had stipulated prior to trial that it would not elicit. *See, e.g., United States v. Bowen,* 857 F.2d 1337 (9th Cir.1988) (government must be strictly held to its promises); *United States v. Powell,* 587 F.2d 443 (9th Cir.1978) (same).

We reverse defendant's conviction because the district court impermissibly and prejudicially limited the evidence that this criminal defendant was entitled to present. Although the evidence that was actually presented to the jury may have been sufficient to sustain defendant's conviction, that evidence was incomplete. In light of our resolution of this issue, we need not reach defendant's remaining arguments.

REVERSED AND REMANDED FOR A NEW TRIAL.