**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Paul Bruce CARPENTER,
Defendant–Appellant.**

No. 95–10056.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1996.

Decided Sept. 4, 1996.

Sandra Gillies, Woodland, California, for defendant-appellant.

Matthew G. Jacobs, Assistant United States Attorney, Sacramento, California, for plaintiff-appellee.

Before: FERGUSON, D.W. NELSON and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Paul Bruce Carpenter appeals his conviction and sentence for one count of conspiracy to commit mail fraud and money laundering and eight counts of mail fraud. Carpenter was found guilty following a 27–day jury trial, and he was sentenced to imprisonment for 87 months. On appeal he claims that there was insufficient evidence to convict him on any of the counts, that the district court erred when it instructed the jury, and that the introduction of a tape recording in the case against his codefendant, Jackson, was prejudicial to him.[1] We affirm.

## BACKGROUND

The background of the agreement among Carpenter, Senator Alan Robbins, and Clayton Jackson is well stated in our decision in *United States v. Jackson*, 72 F.3d 1370 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1546, 134 L.Ed.2d 649 (1996), where we said:

> Jackson and Robbins sought to avoid the reporting requirements attached to campaign funds. They enlisted the aid of former Senator Paul Carpenter, then serving on the Board of Equalization. Carpenter offered to let Jackson's clients contribute to his campaign committee and then have his campaign committee make payments at Robbins' direction.
>
> Jackson, Robbins, and Carpenter worked out a scheme whereby Jackson had

---

1. Carpenter also asked that his case be remanded for resentencing in the event that a proposed amendment to the United States Sentencing Guidelines went into effect. However, the amendment did not go into effect. Thus, we do not address this request.

In addition, Carpenter attempts to join in some of the arguments raised by Jackson in his separate appeal. *See* Fed. R.App. P. 28(i). However, Rule 28(i) does not apply to cases which are not consolidated. Even if it did, the issues raised in Jackson's appeal have already been decided. Those determinations are the law of the case, and the issues cannot be relitigated by Carpenter. *See United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991).

his clients contribute to Carpenter, who, as a member of the Board of Equalization, was relatively immune from criticism for accepting large donations from insurance companies. Carpenter, after taking his cut, would then write checks and mail them to the Goddard Company, ostensibly as compensation for public relations work performed by the Goddard Company. In fact, Jennifer Goddard of the Goddard Company was a friend of Robbins, did no work for Carpenter, and would merely issue a false invoice to Carpenter in return for the payments. Carpenter carried the lie to the California Secretary of State, mailing mandatory reports characterizing these expenditures of campaign funds as payments for professional services. After taking her cut, Jennifer Goddard would either pass the money on to Robbins directly or spend it on Robbins' personal expenses as he directed.

In all, Carpenter received over $84,000 in contributions from Jackson's clients, at Jackson's request, and passed $78,500 on to Goddard, Robbins' front.

*Id.* at 1374. We later added: "There can ... be little doubt on the record here that if the insurance executives understood that Carpenter was not in the state senate or that their money would be passed on to Robbins, they would not have made the donations Jackson requested." *Id.* at 1383.

Carpenter and Jackson were both convicted for their participation in the scheme.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. §§ 1341, 3231; we have jurisdiction pursuant to 28 U.S.C. § 1291.

■ Usually, we review the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Segura–Gallegos*, 41 F.3d 1266, 1268 (9th Cir.1994) (citations omitted). However, when a defendant fails to renew his motion for judgment of acquittal at the close

of all evidence, we will review a claim of insufficiency of the evidence only for plain error. *United States v. Oliver*, 60 F.3d 547, 551 (9th Cir.1995).

■ When a defendant fails to object to jury instructions at the time of trial, we will review a district court's failure to properly instruct the jury for plain error. *United States v. Chambers*, 918 F.2d 1455, 1458 (9th Cir.1990). Plain error requires a reversal only to prevent a "miscarriage of justice" or where "'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

■ We review evidentiary rulings for an abuse of discretion. *United States v. Blaylock*, 20 F.3d 1458, 1462 (9th Cir.1994).

### A. *Sufficiency of the Evidence.*

Carpenter failed to renew his motion for judgment of acquittal at the close of all of the evidence. It makes little difference whether we review his claim of insufficiency of the evidence for plain error, *Oliver*, 60 F.3d at 551, or under the usual standard for properly preserved issues, *Segura–Gallegos*, 41 F.3d at 1268. Carpenter's attack fails under either standard.

■ Of course, a conviction for conspiracy requires proof of an agreement to accomplish an illegal objective coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense. *See United States v. Nelson*, 66 F.3d 1036, 1044 (9th Cir.1995); *see also United States v. Pinkney*, 15 F.3d 825, 827 (9th Cir.1994). A conviction for mail fraud in violation of 18 U.S.C. § 1341 requires "proof that the accused (1) participated in a scheme or artifice to defraud, and (2) caused a use of the mails, (3) for the purpose of executing the scheme." *United States v. Manarite*, 44 F.3d 1407, 1411 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2610, 132 L.Ed.2d 854 (1995); *see also United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.1984), *cert. denied,* 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *United States v. Bohonus*, 628 F.2d 1167,

1172 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). Mail fraud also requires the intent to defraud someone of money or property. *See United States v. Thomas,* 32 F.3d 418, 419 (9th Cir.1994); *see also McNally v. United States,* 483 U.S. 350, 356, 107 S.Ct. 2875, 2879–80, 97 L.Ed.2d 292 (1987); *United States v. Lewis,* 67 F.3d 225, 233 (9th Cir.1995); *United States v. Bruchhausen,* 977 F.2d 464, 467–68, 469 (9th Cir.1992). Finally, a conviction for money laundering requires proof that a defendant (1) "conducted a financial transaction which involved the proceeds of unlawful activity," (2) "knew that the property involved was the proceeds of some form of specified unlawful activity," and (3) either (a) "intend[ed] to promote the carrying on of specified illegal activity," or (b) knew that a transaction he engaged in was for the purpose of concealing or disguising ownership or control of ill-gotten proceeds. *United States v. Montoya,* 945 F.2d 1068, 1076 (9th Cir.1991) (internal quotation omitted).

■ We have reviewed the evidence in this case, and it is pellucid that a rational juror could find Carpenter guilty of all of the crimes charged. In brief, he did engage in a conspiracy to defraud political contributors of their funds by helping to divert those funds from proper purposes to the personal uses of Robbins. Carpenter got a fee for his trouble. He also helped to hide those activities by filing false reports with the California Secretary of State. Had Carpenter filed truthful reports, the scheme would have been easily uncovered. Of course, we do not mention all of the evidence here; nor need we do so. We have already set forth much of the salient information, and some additional detail appears in *United States v. Jackson,* 72 F.3d 1370 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1546, 134 L.Ed.2d 649 (1996).

### B. *Instructions.*

At trial Carpenter failed to object to the jury instruction on materiality of the evidence, which he now attacks. We, therefore, review that instruction for plain error only.

■ Carpenter asserts that the jury was not told that it was to determine whether the misrepresentations or contributions from the contributors were material. That simply is not accurate. The trial court clearly explained that the government must prove beyond a reasonable doubt that there was a scheme to defraud in which Carpenter knowingly participated. It also told the jury that the scheme required "false or fraudulent representations or promises reasonably calculated to deceive persons of average prudence." It then said that the fraudulent representation (or concealment) "must relate to a material fact or matter." It finally went on to explain that "a material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision." Taken together, these instructions told the jury that it was to decide the question of materiality. Thus, this case is in no way similar to one where the question of materiality is taken from the jury in whole or in part. *Cf. United States v. Gaudin,* — U.S. —, —, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995).

Carpenter goes on to complain of the use of the word "concern" in the instruction. He suggests that "concern" is not a strong enough statement of the standard because it differs from the Supreme Court's indication that a misrepresentation is material if it " 'has a natural tendency to influence, or was capable of influencing, the decision of' the decision-making body to which it was addressed." *Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988) (citation omitted). In context, we disagree. The district court did not say concern and stop at that; it added that the statement would be one that would be relied upon in decision making. We think that is the functional equivalent of the "tendency" to influence or "capable of influencing" language used by the Supreme Court. If a representation or statement is of concern to a person relying upon it, it certainly has a tendency to influence the decision-making process. This discussion, of course, underscores one of the reasons for a plain error standard. What seemed perfectly proper to the trial court and to the parties at trial is now seized upon in hindsight as a reason to overturn the

jury's verdict. But even if upon deep reflection the instruction is not perfect, we cannot say that its deficiency was " 'clear' or, equivalently, 'obvious.' " *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777. Similarly, we cannot say that any error would result in a miscarriage of justice or that it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736, 113 S.Ct. at 1779. In short, there was no error; if there was, it was not plain; and if it was plain, it still does not require reversal.

### C. *Admission of Evidence.*

██ Carpenter also complains that a tape recording between his codefendant, Jackson, and Robbins referred to him in a manner which suggested that he had conspired with them. The district court admitted that evidence, but instructed the jury that it was only to be considered against Jackson himself. The district court, of course, recognized that, absent precautions, the recording could have some effect upon Carpenter's case. Therefore, the court carefully instructed both before the tape was heard and again at the end of the trial that the jury must not consider that evidence when it deliberated upon the charges against Carpenter. That was an appropriate method of dealing with the issue. We find no abuse of discretion. *See Blaylock*, 20 F.3d at 1462. That is particularly true in light of the other evidence in the case—both Robbins and Jackson testified. When Carpenter's trial counsel was informed by the district court of the nature of the instruction it would give, he said "I like it." We do too.

### CONCLUSION

What we said in *Jackson* applies here also. Carpenter "engaged in behavior so antithetical to and destructive of our political traditions that there can be no serious argument that [he] is an innocent man convicted by a jury whose real problem was prejudice against the democratic process." 72 F.3d at 1386. There was no plain error; there was no miscarriage of justice; there was no error that seriously affected the proceeding. The evidence was ample and properly admitted. The jury was properly instructed. Carpenter must simply face the penalty for his worse than picaresque behavior.

### AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

This case is a political corruption case. There is no question that public financing laws have been violated. The issue here, however, is whether various insurance companies have been defrauded.

For many years Clayton Jackson was a preeminent corporate lobbyist in Sacramento, California. Alan Robbins was a State Senator and the Chairman of the Senate Insurance Committee. These two men had a long-running corrupt relationship—Robbins traded legislative assistance to Jackson's insurance company clients in return for substantial campaign contributions. The contributions to Robbins from the insurance companies became so large that Jackson worried that other members of the Senate Insurance Committee might expect similarly large contributions. In order to solve this problem, Jackson asked Robbins to find a way that the insurance companies could continue to funnel money to Robbins without Robbins having to report the contributions under the finance disclosure laws. Robbins then went to Carpenter, who agreed that Jackson would make recommendations to the insurance companies to contribute to Senator Paul Carpenter. Then Carpenter would funnel the money to Robbins. Carpenter, however, was no longer a member of the State Senate.

There is no question that the citizens of California have been the victims of fraud. But the issue is whether or not the insurance companies were. In considering this one must recognize the relationship between the insurance companies, Jackson, and Robbins; that the insurance companies' favorite donee was Robbins; and that he was the most influential politician in California on issues affecting insurance companies. In the context of this political scandal, the jury had to determine whether Paul Carpenter was guilty of participating in a scheme to defraud the insurance companies.

Our Constitution requires that a jury find the defendant guilty of every element of the crime charged. In the present case, the jury was instructed on the elements of mail fraud, which included the following definition of materiality:

> The concealment of material facts may also constitute fraud under the statute. The fraudulent representation or statement must relate to a material fact or matter. A material fact is one which would reasonably be *expected to be of concern* to a reasonable and prudent person in relying upon the representation or statement in making the decision.

(emphasis added). Here, the instruction on the definition of materiality was so inadequate that the jury could not have possibly considered the materiality requirement of the crime of mail fraud.

In all fraud cases (civil and criminal) only one kind of misrepresentation matters—a *material* misrepresentation. Restatement (Second) of Torts § 538 (1977); *BMW of North America, Inc. v. Gore,* —— U.S. ——, —————, 116 S.Ct. 1589, 1600–01, 134 L.Ed.2d 809 (1996); *Field v. Mans,* —— U.S. ——, —————, 116 S.Ct. 437, 442–43, 133 L.Ed.2d 351 (1995); *United States v. Benny,* 786 F.2d 1410, 1418 (9th Cir. 1986), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). Quite simply, not all lies support liability.

In *United States v. Halbert,* 712 F.2d 388 (9th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984), a mail fraud case, the following rule for materiality was established:

> The test for determining the materiality of the false statement, representation or promise is whether it is made to induce action or reliance by another. In other words, does it have a natural tendency to influence or is it capable of influencing another's decisions?

*Id.* at 390. Similarly, in *Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988), the Court acknowledged that the uniform definition of materiality was "a concealment or misrepresentation [that] has a natural tendency to influence, or was capable of influencing, the decision of the decision making body to which it was addressed."

The term "material" has been defined in many legal contexts. In the arena of securities fraud, this court has stated: "The test for materiality is whether there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision." *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1221 (9th Cir. 1980); *see also Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). In other securities cases, we have articulated the definition as: "A fact is material if its existence or non-existence is a matter to which a reasonable person would attach importance in determining his choice of action in the transaction." *Toombs v. Leone,* 777 F.2d 465, 469 (9th Cir.1985). Similarly, in bankruptcy fraud cases:

> A statement [is] materially false if it includes information which is "substantially inaccurate" and is of the type that would affect the creditor's decision making process. To except a debt from discharge, the creditor must show not only that the statements are inaccurate, but also that they contain *important and substantial untruths.*

*Candland v. Insurance Company of North America (In re Candland),* 90 F.3d 1466 (9th Cir.1996) (emphasis added).

Jury instructions must meet constitutional requirements because the Fifth and Sixth Amendments require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime charged. *Sullivan v. Louisiana,* 508 U.S. 275, 277–78, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970) (emphasis added). Furthermore, a jury instruction which misdescribes an element of the crime "deprives the jury of its factfinding role" and is constitutionally infirm. *Carella v. Califor-*

*nia,* 491 U.S. 263, 270, 109 S.Ct. 2419, 2423, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring), *cited in Roy v. Gomez,* 81 F.3d 863, 867 n. 4 (9th Cir.1996).

In *United States v. Gaudin,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the Supreme Court upheld the Ninth Circuit's reversal of the defendant's conviction for making false statements on loan documents. The Court concluded that materiality is a matter for the jury to decide because it is an essential element of the crime. *Id.* at ——, 115 S.Ct. at 2320. In *Gaudin,* the Court stated:

> The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality.

*Id.* at ——, 115 S.Ct. at 2314.

In the present case, the jury instruction on materiality is constitutionally infirm. It reduces the requirement of materiality to trivia. In every financial transaction every statement made by one party is "of concern" to the other party. The concern may be insignificant or it may be important and substantial. The majority holds that the "of concern" language in the instruction was adequate. However, all of the cases defining materiality insist that the statement or concealment be of such importance that it has a natural tendency to influence or is capable of influencing the making of a decision. The persistent theme in these definitions is that a material fact is one which is *important* in the decision making process of the person who was defrauded.

The failure to properly define materiality is particularly pernicious in this case. The government alleges that the conspiracy was to deceive the "unsuspecting" insurance companies to make contributions to Carpenter when the money actually went to the benefit of Robbins. However, at the trial no insurance company executives testified that they did not want contributions to go to Robbins. They could not because at the same time as they were making donations to Carpenter for the benefit of Robbins, they continued to make donations directly to Robbins. So how could the insurance companies be defrauded by these transactions when they always favored giving money to Robbins, even to the extent that Robbins and Jackson worried that they might give him too much? A reasonable jury after being instructed that materiality meant merely "concern" would have to find the defendant guilty—despite the fact that the money ended up in the hands of the one person who could and did provide legislative assistance to the insurance companies. Although the insurance executives probably were concerned that their contributions were not given directly to Robbins, that concern simply is not sufficient to create fraud. However, the jury was instructed that it was enough.

But perhaps the most disturbing aspect of this case is that by sustaining a conviction based on a jury instruction that completely eviscerates the materiality requirement, the true nature of this political corruption scheme is distorted. The actors in this corrupt scheme were not only Paul Carpenter, Clayton Jackson, and Senator Alan Robbins; but also the insurance companies, who have been made out to be the victims. The record is clear that the insurance companies wanted the influence of Senator Alan Robbins, the Chairman of the Senate Insurance Committee. Jackson provided the mechanism for the insurance companies to win that influence with Senator Robbins. Jackson would send a "list of recommendations for political contributions" to the insurance executives. The list contained names and suggested amounts. The insurance executives sent their checks to Jackson and never asked where their money was going or why they should make donations to the listed politicians. The fact that the insurance companies chose to remain ignorant does not make them innocent victims of fraud; instead, it is evidence of their complicity in a political corruption scheme. There is little doubt that they would be concerned about the structure of how their money got to Robbins. But they were not defrauded. It was one way to get more money to their favorite politician.

This brings us back to "materiality." What statement or act by Carpenter or Jackson was a material misrepresentation or

omission? What could be material to insurance executives who apparently wanted to remain ignorant? What information would have affected the insurance executives' decision in making a political contribution? Only if the insurance executives are completely innocent victims could there have been a misrepresentation or omission of material facts. A more palatable explanation of the political corruption scheme is that there wasn't any information that would have made a difference in the insurance executives' decision to make political contributions because the insurance executives were only *concerned* about whether their interests were protected at the State Capitol.

Many things may be "of concern," but not "material." The defendant in this case was denied his constitutional right to have the jury make a finding on every element of the crime because the jury instruction on the element of materiality was so deficient that it amounted to no instruction at all. Thus, even if the instruction is reviewed for plain error, the conviction should be reversed. *See United States v. Shortman,* 91 F.3d 80 (9th Cir.1996) (reviewing for plain error and reversing conviction for involuntary manslaughter based on erroneous jury instruction which described the standard of care as "without due caution" instead of "gross negligence").

Finally, the adoption by this court of the rule that materiality in mail fraud cases means merely "concern" will have a profound impact upon all such cases tried in this circuit. I can picture the smiles on the faces of those who pursue 10b–5 cases and the horror in the faces of Wall Street executives. *See* Securities Act of 1934, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. The world of commercial transactions will be turned on its head because all that is now needed to sue for fraud is that one who is a participant in a transaction merely have a "concern." No longer must the lie be substantial enough to influence someone, it is enough if it caused just a little concern.

I, therefore, dissent.